# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:16-cv-00182-FDW-DSC

| | |
|---|---|
| FREDERICK SUTHERLAND, | ) |
| Plaintiff, | ) |
| vs. | ) ORDER |
| SUN LIFE ASSURANCE COMPANY OF CANADA, | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on the parties' cross-motions for summary judgment. (Docs. Nos. 17, 19). After reviewing the pleadings, briefs, administrative record, and applicable case law, and after considering the arguments of counsel, the Court DENIES Plaintiff's Motion for Summary Judgment (Doc. No. 17) and GRANTS Defendant's Motion for Summary Judgment (Doc. No. 19).

## I. BACKGROUND

Plaintiff is an ophthalmologist employed with Charlotte Eye Ear Nose and Throat Associates, P.A. ("CEENTA"). On March 1, 2008, CEENTA purchased a long-term disability insurance policy from Defendant, which funds benefits under the Plan. AR0111-45. Beginning in 2011, Plaintiff developed a tremor in his hand making him unable to perform surgery—one of the responsibilities of his occupation. AR0084-86. He filed a claim for partial disability benefits with Defendant April 11, 2012. AR0084-86. Under the terms of the plan, Plaintiff was deemed "partially disabled" December 26, 2011, and became eligible to receive monthly partial disability

benefits July 23, 2012. AR0043. To maintain his monthly partial disability benefits under the plan terms, Plaintiff must earn less than 80% of his pre-disability earnings. AR0126.

Between April 11, 2012, and July 6, 2012, Defendant met with and solicited information from Plaintiff and Plaintiff's employer regarding Plaintiff's pre- and post-disability earnings. AR0185-95. Plaintiff informed Defendant that his pre- and post-disability earnings from CEENTA are comprised of (1) a bi-weekly draw of up to 80% of his previous year's earnings for that period, and (2) a lump sum ("bonus") paid at the end of each quarter. AR0191. On July 5, 2012, CEENTA confirmed that Plaintiff's quarterly bonuses are applicable to Plaintiff's earnings during the preceding quarter. AR046. Based on this information, Defendant notified Plaintiff that each bonus would be applied equally across the preceding quarter when calculating his monthly partial disability benefits. AR115. On July 6, 2012, Defendant advised Plaintiff he had 180 days to appeal the determination but no appeal was made. AR115.

From August 2012 to December 2015, Defendant calculated Plaintiff's monthly benefit using his bi-weekly draw, then performed a quarterly accounting where it adjusted the monthly benefit based on Plaintiff's quarterly bonus. AR0172-1559. Plaintiff continuously acknowledged the accuracy and fairness of the methodology, consented to it, and directed Defendant to continue to employ it. AR0987, 1017, 1041, 1304, 1387, 1463, 1485, 1515, 1519, 1531, 1561.

After discovering Plaintiff had exceeded 80% of his pre-disability earnings over a successive four month period, September 2015 through December 2015, Defendant notified Plaintiff he no longer met the terms of the policy and his partial disability benefits were terminated. AR1523-27. On February 8, 2016—and for the first time—Plaintiff notified Defendant that he disagreed with the quarterly bonus calculation. AR1561. Plaintiff formally appealed the

termination by letter dated February 17, 2016, and Defendant affirmed its decision February 25, 2016. AR 1568-79.

Plaintiff filed his Complaint (Doc. No. 1) with this Court April 21, 2016, seeking review of Defendant's decision to terminate his partial disability benefits. The parties filed cross-motions for summary judgment (Doc. No. 17, 19) on December 14, 2016, and on the same day Defendant filed the full administrative record (Doc. No. 21). A hearing on the pending motions was held February 9, 2017, where both sides presented their arguments. (Doc. No. 27). Plaintiff contends Defendant erred when it prorated his quarterly bonuses—and most notably his year-end bonuses—over the prior three (3) month quarter instead of over the full twelve (12) month year when calculating his partial disability benefits for the fourth quarter of 2015. (Doc. No. 17-3). Defendant argues Plaintiff's claims are (1) barred by the statute of limitations, (2) barred by his failure to timely exhaust his internal plan remedies, and (3) even if Plaintiff's claims are not barred, Defendant's decision to terminate was reasonable. (Doc. No. 20).

## II. STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. R. 56(c). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or

3

unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Once the moving party has met its burden, the burden shifts and the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (quoting FED. R. CIV. P. R. 56(e)).

### III. DISCUSSION

**A. Plaintiff Filed Suit within the Requisite Statute of Limitations and Exhausted His Administrative Remedies.**

A statute of limitations sets forth the period of time a claimant has to file suit. Heimeshoff v. Hartford Life & Acc. Ins. Co., 134 S. Ct. 604 (2013). Because ERISA provides no explicit limitation period, courts look to state law for an analogous provision. Dameron v. Sinai Hosp. of Baltimore, Inc., 815 F.2d 975 (4th Cir. 1987). During oral argument, the parties informed the Court they agree that North Carolina's three (3) year breach of contract limitations period applies. N.C. GEN STAT. § 1-52(1). However, the parties hotly contest when Plaintiff's cause of action 'accrued.'

While state law defines the limitations period, federal law defines when an ERISA cause of action accrues. Heimeshoff, 134 S. Ct. at 604. Accrual, or the date the claimant can "file suit and obtain relief," does not occur "until a claim of benefits has been made and formally denied." Heimeshoff, 134 S. Ct. at 610; Belrose v. Hartford Life & Acc. Ins. Co., 478 Fed. App'x 21, 23 (4th Cir. 2012). Thus, accrual occurs when the plan issues a final denial. Heimeshoff, 134 S. Ct. at 610.

In this case, Plaintiff's partial disability benefits were terminated February 5, 2016; Plaintiff appealed the denial February 17, 2016; Defendant affirmed its decision February 25, 2016; and Plaintiff filed his Complaint April 21, 2016. AR1523-1527, 1561, 1568-1579. Plaintiff's cause of action accrued February 25, 2016, the date Defendant formally denied

Plaintiff's benefit termination. Plaintiff is well within the three (3) year statute of limitations period, and therefore, his claim is not time-barred.

Next, Defendant contends Plaintiff failed to exhaust his internal plan remedies. The Court disagrees. ERISA plan participants are generally required to exhaust the plan's administrative remedies before filing suit to recover benefits. Makar v. Health Care Corp. of the Mid-Atlantic, 872 F.2d 80, 82 (4th Cir 1989). This requirement "rests upon the Act's text and structure as well as the strong federal interest encouraging private resolution of ERISA disputes." Id. at 82 (citations omitted). Plaintiff seeks review of Defendant's decision to terminate his partial disability benefits. In order to exhaust his administrative remedies, Plaintiff must utilize the plan's specific administrative remedy—appeal to the plan within 180 days of the termination of benefits—which Plaintiff did do. Accordingly, Plaintiff exhausted the plan's administrative remedies.

Since Plaintiff failed to appeal the quarterly bonus pro-ration in July 2012, Defendant argues Plaintiff waived his right to challenge the method now. (Doc. No. 20). However, the adverse determination Plaintiff asks this Court to review is the February 25, 2016, final termination of his partial disability benefits—not the July 6, 2012, final calculation decision. Plaintiff may argue that the termination was based on an incorrect pro-ration of his quarterly bonuses, but evidence present in the administrative record showing the calculation was consistently applied for years with Plaintiff's consent, and at his direction, is considered when deciding whether Defendant's decision to terminate was reasonable. Accordingly, Plaintiff exhausted his internal plan remedies.

**B. Defendant's Discretionary Decision to Terminate Plaintiff's Benefits Was Reasonable.**

ERISA provides that a plan participant or beneficiary may bring a civil action to recover benefits he or she is due under the plan's terms, to enforce his or her rights under the plan, or to clarify his or her rights to future benefits under the plan's terms. 29 U.S.C. § 1132(a)(1)(B). The scope of a district court's review in an action challenging a plan administrator's coverage decision under Section 1132(a)(1)(B) turns on whether the benefit plan at issue vests the administrator with discretionary authority. Helton v. AT&T Inc., 709 F.3d 343, 352 (4th Cir. 2013). When "an ERISA benefit plan vests with the plan administrator the discretionary authority to make eligibility determinations for beneficiaries, a reviewing court evaluates the plan administrator's decision for abuse of discretion." Id. at 351 (quoting Williams v. Metro. Life Ins. Co., 609 F.3d 622, 629-30 (4th Cir. 2010)).

Here, the plan provided the plan administrator, Defendant, with full discretionary authority to make eligibility and benefit determinations:

> The Plan Administrator has delegated to Sun Life its entire discretionary authority to make all final determinations regarding claims for benefits under the benefit plan insured by this Policy. This discretionary authority includes, but is not limited to, the determination of eligibility for benefits, based upon enrollment information provided by the Policyholder, and the amount of any benefits due, and to construe the terms of this Policy.

AR0140. Therefore, the Court must review Defendant's decision to terminate Plaintiff's partial disability benefits for an abuse of discretion.

"Applying a deferential standard of review does not mean the plan administrator will prevail on the merits. It means only that the plan administrator's interpretation of the plan 'will not be disturbed if reasonable.'" Conkright v. Frommet, 130 S. Ct. 1640, 1651 (2010). So long as the decision is the result of a "deliberate, principled reasoning process" and it is supported by

"substantial evidence," a reviewing court must affirm, even if the court would reach a different decision independently. Helton, 709 F.3d at 351; see also Williams, 609 F.3d at 630. The Fourth Circuit identified eight nonexclusive factors for courts to consider in evaluating whether a plan administrator abused its discretion:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision-making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it might have.

Booth v. Wal-Mart Stores, Inc. Associates Health & Welfare Plan, 201 F.3d 335, 342-43 (4th Cir. 2000). In light of the applicable Booth factors, the Defendant's decision to terminate Plaintiff's partial disability benefits was reasonable, and therefore, Defendant did not abuse its discretion.

The policy language outlines the test for benefit eligibility and calculation but is silent on how to apply quarterly bonuses. AR0111-46. It is undisputed that Defendant worked with Plaintiff, solicited information from him and his employer in detail, and developed a proposed method that would pro-rate Plaintiff's quarterly bonuses over the prior quarter. AR0185-95. It is also undisputed that Plaintiff, as much as ten specific times, either acknowledged the methodology, consented to it, or directed the Defendant to employ it between November of 2012 and November of 2015.[1] On as late as November 1, 2015, Plaintiff wrote to Defendant, "Also included is [a copy of] my bonus check for the third quarter which should be applied in equal amounts to the third quarter months. Please deduct any overpayment from future disbursements." AR1515.

---

[1] AR0987, 1017, 1041, 1304, 1387, 1463, 1485, 1515, 1519, 1531, 1561.

The administrative record is composed of over 1500 pages that support Defendant's decision to terminate Plaintiff's benefits including communications with the Plaintiff and his employer (AR0185-91), Plaintiff's pay stubs and quarterly bonus statements, and all calculations approved by Plaintiff for each monthly benefit as far back as July 2012 (AR0002-57). It is undisputed that Defendant consistently applied the calculation each month, then performed a quarterly accounting where it adjusted the monthly benefit based on Plaintiff's bonus beginning in November 2012 and continuing through February 2016. Using the same methodology, Defendant terminated Plaintiff's benefits when his post-disability earnings exceeded 80% for four (4) successive months—deeming Plaintiff no longer partially disabled under the terms of the plan. AR1569-79. The termination, the calculation the termination was based upon, and the terms the plan exercised were consistent with the goals of the plan—to provide a monthly benefit if a disabled participant's income drops below 80% of his pre-disability average monthly income. There is no evidence Defendant contravened the language of the plan to its benefit, made discretionary decisions that were inconsistent with the plan's purposes or goals, or made any changes to the 2015 quarterly calculation.

"[A] conflict of interest is readily determinable by the dual role of an administrator or other fiduciary . . . [a]nd any conflict of interest is considered as one factor, among many, in determining the reasonableness of the discretionary determination." Champion v. Black & Decker Inc., 550 F.3d 353, 359 (4th Cir. 2008) (citing Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105 (2008)). The Court recognizes Defendant has a conflict of interest. However, Defendant had the right to terminate benefits as early as January 2013. The plan policy reads, "Total or Partial Disability Benefits will cease on the earliest of . . . the date the Employee's Disability Earnings exceed 80% of his Indexed Monthly Earnings." AR0126. Under the same calculation, Plaintiff's monthly

earnings for October 2012 through December 2012, October 2013, and October 2014 exceeded 80%. AR1021-25, 1339-43, 1432-36. Based on the aforementioned provision, Defendant could have terminated Plaintiff's benefits the first time Plaintiff's earnings exceeded 80%. Instead, Defendant interpreted the provision in Plaintiff's favor and continued to pay—and Plaintiff did not object.

Plaintiff asks this Court to consider the information contained in Defendant's training web site known as the "wiki" and argues the information within the wiki is inconsistent with Defendant's pro-ration method. (Doc. No. 18-1). A Court is generally limited to evidence within the administrative record when assessing the Booth factors; however, a court may consider evidence outside of the record if known to the plan administrator when rendering its decision. Helton, 709 F.3d at 352. When asked directly during oral argument, Defendant could not confirm whether the wiki was known when the decision was made to terminate Plaintiff's benefits, and Plaintiff closed her deposition of Defendant's 30(b)(6) wiki and training designee early, without asking whether the wiki was used in the decision to terminate. (Doc. No. 17-2). Plaintiff has failed to provide any evidence to support this Court's consideration of the wiki.

The Court notes, however, that even if it considered the wiki in its review, the wiki supports Defendant's decision to terminate. The wiki notes all claims are evaluated on their own merits; quarterly bonuses shall be pro-rated over a three (3) month period; and, if a participant's post-disability earnings exceed 80% for a successive three months, then benefits shall be terminated. (Doc. No. 18-1).

This is not a case where plan terms were inconsistently applied or ignored, or where an administrator failed to present any evidence for its decision or address conflicting evidence in the record. See Johannssen v. Dist. No. 1—Pac. Coast Dist. MEBA Pension Plan, 292 F.3d 159 (4th

Cir. 2002) (finding decision unreasonable where denial disregarded plain terms of plan); <u>Weaver v. Phenois Home Life Mut. Ins. Co.</u>, 990 F.2d 154, (4th Cir. 1993) (finding abuse of discretion where plan admitted it produced no evidence that it even remotely considered any specific reasons for denying claim).  Defendant's decision was the product of a deliberate, principled reasoning process supported by substantial evidence.

## IV. CONCLUSION

Accordingly, Plaintiff's Motion for Summary Judgment (Doc. No. 17) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 19) is GRANTED.  The Clerk is respectfully DIRECTED to enter judgment in favor of Defendant and CLOSE THE CASE.

SO ORDERED.

Signed: March 2, 2017

Frank D. Whitney
Chief United States District Judge